UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                            :

ANI PHARMACEUTICALS, INC.,               :

                            :

               Plaintiff,         :

                            :        25-CV-9227 (JMF)

        -v-                 :

                            :       OPINION AND ORDER

LIFSA DRUGS, LLC et al.,             :

                            :

               Defendants.      :

                            :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

This case — brought by ANI Pharmaceuticals, Inc. ("ANI") against Lifsa Drugs LLC

("Lifsa") and its principal, Rajesh M. Kumar — centers on a contract for the sale and distribution

of certain pharmaceutical products.  ANI contends that Lifsa and Kumar misrepresented Lifsa's

financials to induce ANI to enter the contract, which Lifsa ultimately breached.  Thus, it brings

claims for breach of contract, fraudulent inducement, and negligent misrepresentation, seeking to

impose liability on both Lifsa and Kumar as Lifsa's alter ego.  Now pending is Defendants'

motion to dismiss, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil

Procedure, all claims against Kumar for lack of personal jurisdiction as well as the tort claims

and the alter-ego allegations for failure to state claim.  For the reasons that follow, Defendants'

motion is GRANTED, and ANI's claims against Kumar as well as its tort claims are dismissed,

leaving the breach-of-contract claims against Lifsa as the sole remaining claims.

## BACKGROUND

The following facts are, unless otherwise noted, drawn from the operative Second

Amended Complaint ("Complaint") and assumed to be true for purposes of this motion.  *See,*

*e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

ANI is a pharmaceutical company that develops, manufactures, and sells pharmaceutical products for distribution in and outside of the United States.  *See* ECF No. 43 ("SAC"), ¶ 4. Lifsa is a New Jersey company that sells and distributes pharmaceuticals under its own private label.  *Id.* ¶ 5.  Kumar is Lifsa's sole member, officer, and employee.  *Id.* ¶ 1(c), 6, 39(c).  Lifsa's one and only office is located in Kumar's home, which is located in New Jersey.  *Id.* ¶ 39(b).

In or around early 2022, ANI and Kumar began discussing the prospect of Lifsa distributing two of ANI's products (the "Products").  *See id*. ¶¶ 45(a)-(b).  As part of the negotiations that followed, on January 26, 2022, Kumar sent an email to Parasaran Srinivasan, Vice President of Marketing & Commercial Operations at ANI, in which he "conflated Lifsa with another Kumar-controlled entity," National Bio Green Sciences LLC ("NBGS"), "referenc[ing] [them] collectively as 'my company,' and represent[ing] that [they] had 16 pharmaceutical products in the United States market with gross annual sales of over $65 million."  *Id.* ¶ 45(a); *see also id.* ¶¶ 44-45.  About a month later, on February 18, 2022, Kumar attended a lunch meeting with Srinivasan and two ANI Senior Vice Presidents, Chad Gassert and Ori Gutwerg, at Café Bello in Bayonne, New Jersey.  *Id*. ¶ 45(d).  During the meeting, Kumar "made a [PowerPoint] presentation" on Lifsa's behalf, which featured, as relevant here, a "table of 'Sales Actual and Projected,' representing total United States actual sales of pharmaceutical products by Lifsa of $60 million in 2020 and $75 million in 2021, and projected sales of $100 million in 2022."  *Id.* ¶ 45(d).  "At ANI's request, Kumar also provided Srinivasan, Gassert and Gutwerg with copies of a Lifsa bank statement and certain other financial data," but he "advised" them "that they were not permitted to retain copies of the statement after the meeting."  *Id.* ¶ 45(e).  Based on Kumar's "representations and statements," ANI contracted with Lifsa to assist with distribution of the Products.  *See, e.g.*, *id.* ¶¶ 45(e)-46.

Specifically, on March 12, 2022, ANI and Lifsa entered into a Private Label and Supply and Distribution Agreement (the "Supply Agreement" or "Agreement"), a copy of which is attached to the Complaint. *See id.* Exs. A ("Agmt") & B ("Amend."). Kumar signed the Agreement in his representative capacity as Lifsa CEO. *See* Agmt. 20; Amend. 1. Through the Agreement, ANI appointed Lifsa as its exclusive U.S. distributor, giving it sole responsibility for marketing and sale of the Products, *see* SAC ¶¶ 8-9, 11-12; Agmt. 1, 4 & §§ 2.1-.2, and imposed on Lifsa certain minimum purchase requirements on a "take or pay" basis, *see* SAC ¶ 15; Agmt. § 4.3(i)-(ii). As relevant here, the Agreement contains a forum-selection clause, which provides that, "[i]f a dispute [arising from this Agreement] cannot be settled in an amicable manner" within thirty days, "the Parties agree to exclusively refer the dispute to the state and federal courts of the State of New York." Agmt. § 9.13. The Agreement also contains a choice-of-law clause, which provides that the contract "is governed by and shall be construed in accordance with State of New York, without reference to its conflict of law provisions." *Id.* § 9.12.

From the get-go, Lifsa failed to satisfy the contractually required minimum purchase requirements. *See* SAC ¶¶ 20, 23. On September 12, 2023, after Lifsa had failed to meet its obligations for three consecutive periods with respect to one drug and two consecutive periods with respect to the other, ANI issued invoices to Lifsa for those periods totaling approximately $16.5 million. *See id.* ¶¶ 21, 24; *id.* Ex. C ("HCS Invoice"); Ex. D ("Valsartan Invoice"). When Lifsa failed to pay these invoices, *see* SAC ¶¶ 22, 25, 29, ANI brought this lawsuit against Lifsa and Kumar, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. *See* ECF No. 1. The operative Complaint asserts claims for breach of contract (Counts I and II), fraudulent inducement (Count IV), and negligent misrepresentation (Count V) against Lifsa, *see* SAC ¶¶ 30-37, 48-55, and seeks to impose liability on Kumar as Lifsa's purported alter ego (Counts

3

III-V), *see id.* ¶¶ 38-55.  As noted, now pending is Defendants' motion to dismiss, pursuant to Rules 12(b)(2) and 12(b)(6), all claims against Kumar for lack of personal jurisdiction as well as the alter-ego allegations and tort claims for failure to state a claim.  *See* ECF No. 45.

**DISCUSSION**

Personal jurisdiction is generally "a threshold question to be addressed prior to consideration of the merits of a claim."  *Enhanced US LLC v. World Aquatics*, No. 25-CV-7096 (JMF), 2025 WL 3206662, at *4 (S.D.N.Y. Nov. 17, 2025) (internal quotation marks omitted).  Accordingly, the Court will begin with Defendants' motion to dismiss all claims against Kumar for lack of personal jurisdiction.  *See also, e.g.*, *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11 (2025) ("We have long held that a court must have power over the parties before it (personal jurisdiction) before it can resolve a case." (cleaned up)).

**A.  Personal Jurisdiction over Kumar**

"To defeat a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over a defendant."  *Kamat v. League Network, PBC*, No. 25-CV-3307 (JMF), 2026 WL 183697, at *2 (S.D.N.Y. Jan. 23, 2026) (internal quotation marks omitted); *see also, e.g., Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam).  Such a showing "entails making legally sufficient allegations, including an averment of facts that, if credited, would suffice" to establish that jurisdiction exists.  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (cleaned up).  A "plaintiff is required to establish personal jurisdiction separately over each defendant," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,* 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), and "with respect to each claim asserted," *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  In evaluating personal jurisdiction, a

4

court must construe "all allegations . . . in the light most favorable to the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted).

In this case, Defendants "concede (or, at least, do not dispute)" that Lifsa consented to jurisdiction in this Court with respect to ANI's claims through the Supply Agreement's forum-selection clause. *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 230 (S.D.N.Y. 2025); *see* SAC ¶ 2; ECF No. 47 ("Defs.' Mem."), at 5; ECF No. 54 ("Defs.' Reply"), at 1; *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). The question is whether the forum-selection clause similarly provides for personal jurisdiction over the claims against Kumar, who, the parties agree, signed the Supply Agreement only in his representative capacity. Because "a forum-selection clause does not give rise to personal jurisdiction over a non-signatory unless the non-signatory is otherwise bound to the agreement," the answer to that question depends, in turn, on whether ANI plausibly alleges that Kumar and Lifsa are alter egos of one another. *Koh v. Koo*, No. 22-CV-6639 (JMF), 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023) (internal quotation marks omitted); *see id.* at *2 ("[W]here a court has personal jurisdiction over one defendant, . . . it may also exercise personal jurisdiction over an alter ego defendant" (internal quotation marks omitted)); *see also, e.g., Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("[I]n general, alter egos are treated as one entity for jurisdictional purposes." (internal quotation marks omitted)).

Under New York law — which the parties rely on, *see* Defs.' Mem. 5-9; ECF No. 50 ("Pl.'s Mem."), at 8-13; Defs.' Reply 1-3, and, thus, the Court will apply, *see, e.g., Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) — "a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the

transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil," *Caplan*, 803 F. Supp. 3d at 231 (cleaned up).  In the jurisdictional context, however, "[t]hese standards are relaxed," and the "plaintiff need only show that the allegedly controlled entity was a shell for the allegedly controlling party."  *Id.* (internal quotation marks omitted); *see also Koh*, 2023 WL 5352786, at *3 (collecting Second Circuit authority in support of this proposition).  To determine whether this requirement is met, courts consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization;
> (3) intermingling of funds; (4) overlap in ownership, officers, directors, and
> personnel; (5) common office space, address, and telephone numbers of corporate
> entities; (6) the degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the entities are at arms' length;
> (8) whether the corporations are treated as independent profit centers; (9) payment
> or guarantee of the corporation's debts by the dominating entity, and
> (10) intermingling of property between the entities.

*Koh*, 2023 WL 5352786, at *2 (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997); and then *N.Y. State Elec. and Gas Corp. v. FirstEnergy Corp.,* 766 F.3d 212, 224 (2d Cir. 2014)).  At bottom, however, "it is well settled that courts are reluctant to disregard the corporate entity."  *Caplan*, 803 F. Supp. 3d at 231 (cleaned up).

Measured against these standards, ANI's alter-ego arguments fall short.  ANI alleges that Kumar "was and is [Lifsa's] sole member, officer and employee," SAC ¶ 39(a), and that Lifsa's "registered and sole office" — for which it pays no rent — "is located in Kumar's home," *id.* ¶ 39(b).  But, without more, these allegations are insufficient for the Court to infer that Kumar so dominated Lifsa as to satisfy the first prong of the alter-ego analysis.  *See, e.g.*, *Indus. Water Sols., LLC v. Ravyn & Robyn Constr., LLC*, 789 F. App'x 920, 921 (2d Cir. 2020) (summary order) (finding veil-piercing claim inadequately pleaded where the "complaint sets out only generalized and conclusory allegations regarding common ownership, employees, management,

6

control, and decision making" between two companies); *Caplan*, 803 F. Supp. 3d at 232

(rejecting an alter-ego theory of personal jurisdiction where the plaintiffs alleged that "many of"

the defendants that were not signatories to the forum-selection agreement at issue "shared

officers and directors, as well as office spaces" with the signatory defendants, "one [office] being

[a signatory defendant's] residence" (citation omitted)); *Vibes Int'l Inc., SAL v. Iconix Brand

Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020)

("Allegations of complete ownership, common officers and personnel, and shared office space

are, without more, insufficient for the Court to infer that [the alleged dominated company] was

controlled and dominated by [the alleged dominating company.]"). Indeed, "such facts are not

uncommon" in the case of "closely-held corporations" and, thus, "must be considered in the

context of other factors showing domination." *John Wiley & Sons, Inc. v. Nice Glob. LLC*, No.

25-CV-2662 (RA), 2026 WL 880403, at *7 (S.D.N.Y. Mar. 31, 2026) (internal quotation marks

omitted); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d

Cir. 1996) (cautioning that "an over-rigid preoccupation with questions of structure" is

inappropriate "with respect to small, privately-held corporations" because "the trappings of

sophisticated corporate life are rarely present" (internal quotation marks omitted)).

ANI's other "assertions about [Kumar's] abuse of [Lifsa's] corporate form are far too

generalized and conclusory to suffice." *Caplan*, 803 F. Supp. 3d at 233. For example, ANI

alleges that, on "information and belief," Kumar "has insufficiently capitalized Lifsa with less

than $250,000 in capital," and "disregard[ed] the formalities of operating Lifsa as a separate

LLC." SAC ¶¶ 39-40. But it provides no factual basis to support the assertion that maintaining a

capital reserve of $250,000 renders Lifsa "undercapitalized." Nor does it "detail which corporate

formalities were not observed." *Long Side Ventures LLC v. Hempacco Co.*, No. 22-CV-08152

(ALC), 2023 WL 6386888, at *10 (S.D.N.Y. Sept. 29, 2023) (requiring factual support for such allegations).  Likewise, ANI asserts that "Kumar commingled Lifsa's assets and funds with his own personal assets and funds," SAC ¶ 39(d), and "use[d]" the company's "assets, funds and bank accounts . . . for his personal . . . benefit," *id.* ¶ 40, but it fails to "identify specific facts or details" to support these conclusory assertions, *Caplan*, 803 F. Supp. 3d at 233; *see also, e.g.*, *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.,* 694 F. Supp. 3d 374, 386 (S.D.N.Y. 2023) (holding that allegations that, among other things, the "two sisters" who "r[a]n" a company "failed to maintain a formal legal separation between [the company] and their personal financial affairs," were inadequate to plead domination and control); *Long Side Ventures*, 2023 WL 6386888, at *8 (finding that allegations that the "[d]efendants commingled assets with the corporate entities" conclusory where the plaintiffs had not "set forth facts to support" that contention).  In short, ANI's alter-ego arguments do not support the exercise of personal jurisdiction over Kumar.  Thus, Defendants' motion to dismiss the claims against Kumar for lack of personal jurisdiction must be and is granted.

**B.  ANI's Tort Claims Against Lifsa**

That leaves Lifsa's motion to dismiss, pursuant to Rule 12(b)(6), ANI's tort claims for fraudulent inducement and negligent misrepresentation.  When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, when a pleading alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9(b).  To satisfy this requirement, a complaint "ordinarily must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Miller v. United States ex rel. Miller*, 110 F.4th 533, 543-44 (2d Cir. 2024) (internal quotation marks omitted).

The threshold question is whether New York or New Jersey law applies to ANI's tort claims, which fall outside the scope of the Supply Agreement's choice-of-law clause.  *See, e.g.*, *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 219-20 (S.D.N.Y. 2019).  The question is academic with respect to the fraudulent inducement claim, as the "elements" of the claim "are similar under New York and New Jersey law."  *Lucas v. Verizon Commc'ns, Inc.*, No. 20-CV-5542 (AJN), 2021 WL 1226889, at *4 (S.D.N.Y. Mar. 31, 2021) (Nathan, J.).  Thus, the Court will rely, as the parties do, on New York law.  *See* Defs.' Mem. 10-14; Pl.'s Mem. 16-20; Defs.' Reply 4-7.  With respect to the negligent misrepresentation claim, however, ANI contends that New Jersey, not New York, law controls because (1) there is an "outcome-determinative" conflict (to wit, New York requires a "special relationship" of trust between the parties for liability to attach even when, as here, the claim is premised on affirmative misrepresentations, while New Jersey does not) and (2) New Jersey has superior interests in the litigation.  *See* Pl.'s Mem. 21-24; *see also, e.g.*, *CW Int'l Sales LLC v. Glob. Source, Ltd.*, No. 22-CV-6120 (RK) (RLS), 2024 WL 1521355, at *4 n.6 (D.N.J. Apr. 8, 2024) ("New York imposes a 'specialized relationship' requirement in negligent misrepresentation cases not found under New Jersey law").  Defendants do not meaningfully dispute either point and, thus, have "forfeited any

9

argument[s]" to the contrary. *Kamat*, 2026 WL 183697, at *3 (cleaned up). Thus, the Court will apply New Jersey law to ANI's negligent misrepresentation claim.

Under New York law, fraudulent inducement claims require a plaintiff to prove (1) a material misrepresentation or omission of fact, (2) made by the defendant with knowledge of its falsity (3) and an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). And under New Jersey law, negligent misrepresentation claims require a plaintiff to prove (1) an "incorrect" "statement of a past or existing fact"; (2) made negligently by the defendant; (3) "justifiable" reliance by the plaintiff; and (4) resulting loss or injury to the plaintiff. *Myers v. Benucci*, No. A-2507-24, 2026 WL 585808, at *12 (N.J. Super. Ct. App. Div. Mar. 3, 2026); *see also Chung v. Igloo Prods. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *17 (E.D.N.Y. July 8, 2022) (collecting cases). Thus, scienter aside, the elements of these two claims are substantially the same. *See also, e.g.*, *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. CV 16-6510, 2018 WL 2455922, at *5 (D.N.J. May 31, 2018) ("The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter." (internal quotation marks omitted)). Additionally, the crux of both claims is that Lifsa knowingly deceived ANI during their pre-contract negotiations. *See* SAC ¶¶ 44-45; *see also id.* ¶¶ 48-49, 53-54 ("repeat[ing] and realleg[ing]" these allegations, first, with respect to the fraudulent inducement claim and, second, with respect to the negligent misrepresentation claim). Accordingly, "both claims are subject to the heightened pleading standards set forth in Rule 9(b)." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (summary order); *see HSM*

*Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556, at \*20 (S.D.N.Y. Mar. 10, 2021) (holding that negligent misrepresentation claims sounded in fraud and, thus, were subject to Rule 9(b) because (1) the plaintiff "incorporate[d] all preceding paragraphs" in alleging the claims; (2) those paragraphs "insist[ed] upon the knowing deception of the parties"; and (3) the plaintiff was "also bring[ing] specific causes of action alleging fraud" (collecting cases)).

ANI fails to meet the heightened pleading requirements of Rule 9(b). ANI asserts that the operative Complaint "easily" satisfies Rule 9(b) "with respect to the allegation of Defendants' misrepresentation of Lifsa's gross sales," as it "clearly sets forth . . . a false representation that inflated Lifsa's annual sales by also including sales made by" NBSL, Pl.'s Mem. 18, another "Kumar-controlled entity," SAC ¶ 45(a). More specifically, it points to Kumar's January 2022 email to Srinivasan, *see* SAC ¶ 45(a), as well as the PowerPoint presentation, bank statement, and "certain other financial data" that he shared with ANI representatives at the February 2022 lunch meeting, *see id*. ¶¶ 45(d)-(e). *See* Pl.'s Mem. 18-19. But ANI's allegations regarding the "bank statement" and "other financial data" shared at the lunch meeting, SAC ¶ 49(e), do not cut it because they do not "specify" any "statements" alleged to be fraudulent. *Miller*, 110 F.4th at 543. And more broadly, ANI fails to plead with the requisite particularity "how and why" any of Lifsa's statements were false. *See, e.g.*, *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020) ("Under the enhanced fraud standard, plaintiffs must not only allege that the content is false, but 'they must demonstrate with specificity why and how that is so.'" (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)); *AJ Energy*, 2019 WL 4688629, at \*5 (observing that Rule 9(b)

"requires a plaintiff to . . . give particulars as to the respect in which the plaintiff contends the [allegedly false or misleading] statements were fraudulent" (internal quotation marks omitted)).

The sole allegation that comes even close to showing that Kumar conflated Lifsa's and NBSL's sales concerns the 2022 email in which Kumar apparently "referenced" both companies "collectively" as "my company," and then stated that the company had "gross annual sales of over $65 million." SAC ¶ 45(a); *see also* Pl.'s Mem. 3. Significantly, however, the Complaint does not explain, or allege any facts from which the Court might infer, how this statement was false. *See, e.g.*, *Coppelson v. Serhant*, No. 19-CV-8481 (LJL), 2021 WL 148088, at *7 (S.D.N.Y. Jan. 15, 2021) (finding that a complaint that "fail[ed] to allege except in the most general terms . . . what about [the statements at issue] was false" did not "allege fraud with particularity as required by Rule 9(b)"). The same is true with respect to Kumar's subsequent representations concerning ANI's actual sales in 2020 and 2021, *see* SAC ¶ 45(a), as there is nothing to suggest those figures somehow baked in NBSL's sales or otherwise improperly inflated Lifsa's numbers. In fact, ANI does not even attempt to connect Kumar's purported conflation of the two companies' *gross* annual sales over an unspecified time horizon in his email with his follow-on statements concerning ANI's *actual* sales in 2020 and 2021. *See* Pl.'s Mem. 18-19; SAC ¶ 45(d). And even if the Complaint could be read to allege that Kumar attributed some unspecified number of NBSL sales to pad Lifsa's actual sales in his slides, *see* SAC ¶ 45(d), that bare allegation would still be too imprecise and conclusory to plausibly allege that Kumar misrepresented these sales, materially or otherwise. In the end, "Rule 9(b) requires specific allegations" about how and why the alleged misstatements were false "to avoid situations like this where the Court and Defendants are left guessing about the precise grounds for fraud." *Goldrich v. Watkins Wellness*, No. 22-CV-3769 (KMK), 2024 WL 1194716, at *7

12

(S.D.N.Y. Mar. 20, 2024); *see Miller*, 110 F.4th at 544 (explaining that Rule 9(b) is designed, among other things, to provide "fair notice" to defendants). ANI fails to meet that requirement.

ANI's fraudulent inducement claim fails for another reason as well. Although plaintiffs may plead mental states "generally" under Rule 9(b), FED. R. CIV. P. 9(b), fraud plaintiffs "must nonetheless allege facts that give rise to a strong inference of fraudulent intent," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks omitted). A plaintiff may satisfy that requirement in either of two ways. First, "the requisite strong inference of fraud may be established . . . by alleging facts to show that [the] defendant[] had both motive and opportunity to commit fraud." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted)). Significantly, however, "a generalized profit motive that could be imputed to any company . . . has been consistently rejected as a basis for inferring fraudulent intent." *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20-CV-3661 (MKV), 2021 WL 4463109, at *6 (S.D.N.Y. Sept. 29, 2021) (internal quotation marks omitted) (collecting cases). Second, a plaintiff may "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 291 (internal quotation marks omitted). But "[w]here a motive is not apparent, . . . the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (internal quotation marks omitted); *see also, e.g.*, *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 495 (S.D.N.Y. 2017) (same in the context of a fraudulent inducement claim).

ANI's allegations fall short. First, the Complaint does not allege that Kumar had any motive to defraud, except insofar as it could be read to allege that he "intended to benefit financially from" going into business with ANI. *Coppelson*, 2021 WL 148088, at *8 (internal quotation marks omitted). But "such generalized motives . . . do not constitute the type of

13

'concrete benefit' necessary to allege fraudulent intent." *Id.* Second, the Complaint is devoid of facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 291 (internal quotation marks omitted). Indeed, because ANI failed to plead sufficient facts to show that Kumar made any misrepresentations at all, his statements do not support an inference — let alone a strong one — that Kumar "knew facts or had access to information suggesting that [his] public statements were not accurate," engaged in "deliberately illegal behavior," or otherwise acted with fraudulent intent. *Gomez v. Credit Suisse AG*, No. 23-862-CV, 2024 WL 506240, at *2 (2d Cir. Feb. 9, 2024) (summary order) (internal quotation marks omitted); *see Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, No. 11-CV-4416 (LAK), 2013 WL 628533, at *15 (S.D.N.Y. Feb. 15, 2013) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008))). In fact, that Kumar openly referenced both of his companies when citing the "gross annual sales" figures in his initial email, SAC ¶ 45(a), undermines any inference that he was attempting to deceive ANI.

Perhaps recognizing that the Complaint fails to satisfy Rule 9(b), ANI improperly attempts to plead additional allegations in its opposition brief. *See* Pl.'s Mem. 18 (arguing that Kumar inflated Lifsa's annual sales "by also including sales made by NBSL, a separate company *with a longer history and more pharmaceutical products on the market*" (emphasis added)); *id.* at n.4 (noting that "ANI later came to learn that . . . neither Lifsa nor Kumar had any corporate relationship with or ownership interest in NBSL"); *id.* at 3 (stating that "Kumar conflated Lifsa with" NBSL, a "*longer-established* pharmaceutical distributor that he claimed to control" (emphasis added)); *see also id.* at 18-19 (citing to its statement of facts, which includes the

14

additional reference to NBSL's "longer-established" nature, in support of its arguments as to particularity and intent). But "[i]t is well settled that a party may not amend its pleadings in its briefing papers," *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 592 n.6 (S.D.N.Y. 2021) (internal quotation marks omitted), so the Court "will not consider these allegations on the instant motion," *id.* at 594. And even if it did, these allegations would not save ANI's tort claims from dismissal. That is because the gravamen of those claims is that Kumar lied about Lifsa's financial capabilities, particularly its sales volume, and that ANI relied on those lies in entering the Supply Agreement. *See* Compl. ¶¶ 44, 45-46; Pl.'s Mem. 3-4, 18-20. ANI's additional assertions, however, do not relate to Lifsa's *sales*. And although Kumar's allegedly false claim that he owned NBSL might well be particular enough to satisfy Rule 9(b)'s strictures, ANI neither alleges nor otherwise contends that it relied on that specific representation in contracting with Lifsa. *See Tradeshift*, 2021 WL 4463109, at *7 ("Claimants alleging reasonable reliance must plead that they actually relied on the alleged misrepresentations, specifically that the misrepresentation was a 'substantial factor' in their decision." (internal quotation marks omitted)); *Myers*, 2026 WL 585808, at *13 ("[A] plaintiff's reliance on an alleged misrepresentation must be actual, as well as justifiable." (internal quotation marks omitted)); *cf., e.g.*, *Goldrich*, 2024 WL 1194716, at *6 (dismissing a fraudulent concealment claim where, among other things, there was "a mismatch between the [Complaint's] concealment and reliance allegations"). Thus, even with ANI's supplemental allegations, its fraudulent inducement claim against Lifsa would fail as a matter of law.

In short, ANI's tort claims must be and are dismissed for failure to state a claim.[1]

---

[1]    In light of the this result, the Court need not and does not address whether it was procedurally proper for ANI to assert the tort claims in the first place. *Compare* Defs.' Mem. 9-10; Defs.' Reply 3-4, *with* Pl.'s Mem. 13-16. Likewise, because the Court does not reach

15

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be and is GRANTED. Specifically, all claims against Kumar are dismissed for lack of personal jurisdiction, and ANI's tort claims against Lifsa are dismissed for failure to state a claim.  Moreover, the Court declines to grant ANI leave to amend its Second Amended Complaint *sua sponte.*  Although leave to amend a complaint should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted).  Here, ANI does not request leave to amend or suggest that it is in possession of facts that would cure the problems with its claims.  *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).  Additionally, the Court granted ANI leave to amend its First Amended Complaint in response to Defendants' earlier motion to dismiss ANI's alter-ego claims and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 42; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte.*" (citing cases)).

The Clerk of Court is directed to terminate ECF No. 45.

SO ORDERED.

Dated: July 1, 2026
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

Defendants' arguments about reasonable reliance, *see* Defs.' Mem. 12-13; Defs.' Reply 5-6, it need not and does not consider ANI's surreply on this issue, ECF No. 58, let alone Defendants' request for "leave to submit a brief response" to that surreply, ECF No. 59.